IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **MICHELLE J. SHILLING,** | : | Bankruptcy No. 04-30704 BM |
| | : | |
| **Debtor** | : | Chapter 7 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| **MICHELLE J. SHILLING,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | Adversary No. 04-3248 BM |
| | : | |
| **SALLIE MAE SERVICING** | : | **Complaint To Determine** |
| **CORPORATION,** | : | **Dischargeability Of Debt** |

Appearances:   James H. English, Esq., For Plaintiff
John P. Neblett, Esq., for Defendant

## **MEMORANDUM OPINION**

Debtor Michelle J. Shilling seeks a determination that an education loan guaranteed by defendant Sallie Mae Servicing Corporation is not excepted from discharge by § 523(a)(8) of the Bankruptcy Code. Having to repay the loan, debtor contends, would impose an undue hardship on her for purposes of § 523(a)(8).

Sallie Mae denies that debtor has satisfied all of the requirements for undue hardship to apply and insists that the debt owed to it by debtor is excepted from discharge by § 523(a)(8).

We conclude that it would not impose an undue hardship on debtor to repay the loan and that the debt she owes to Sallie Mae is excepted from discharge by § 523(a)(8).

## – FACTS –

Debtor, who presently is thirty years old and has no dependents other than herself, attended various post-secondary schools from 1994 until 2000 or 2001.

She attended Merrimac Community College in St. Louis, Missouri, in 1994 and 1995 and received an Associate's Degree in 1995.

Debtor also attended Lindenwood University in St. Louis in 1998 and received a B.A. degree in psychology that same year.

Finally, debtor attended Webster University in St. Louis in 2001 or 2002, but dropped out of the graduate program in psychology after failing to complete the first course. Debtor never returned to the program and did not receive a degree from Webster University.

Debtor financed her education at Lindenwood University and Webster University with loans guaranteed by Sallie Mae.

Since beginning her post-secondary education, debtor has had numerous relatively low-paying jobs. Among other things, she worked as a waitress, a bartender, a physician recruiter, a model scout, and a debt collector. By her own estimate, debtor has had some sixty jobs during that period and was fired from or quit all of these jobs after only a few weeks or months. Her most recent job, which paid $12.00 per hour, was as a part-time technical writer and lasted from December of 2003 until March of 2004.

Debtor was admitted to a hospital for several weeks in March of 2004 for treatment of bulimia. She has not attempted to find work since her discharge from the hospital in April of 2004, more than eighteen months ago.

Debtor applied to the Social Security Administration in December of 2002 for disability insurance benefits and supplemental security income. In the application, debtor claimed that she had been disabled since May 15, 2000.

After conducting a hearing, an administrative law judge determined in June of 2004 that debtor had been disabled for purposes of the Social Security Act since May 15, 2000, and met the disability status requirements of the Act through September 30, 2007. The administrative law judge found, among other things, that debtor had a severe bipolar disorder as well as panic and personality disorders. Her bipolar disorder, the administrative law judge concluded, satisfied the criteria for disability set forth in the regulations for the Social Security Act.

Shortly after the determination of the administrative law judge, debtor received a lump-sum award in the amount of $21,000 from the Social Security Administration. The award covered the period from May 15, 2000, until June of 2004. Debtor thereafter began receiving monthly disability checks.

Debtor received the $21,000 lump-sum award shortly *after* she filed the bankruptcy petition commencing this case and has spent all but $4,000 of it. Among other things, she has purchased a used automobile, a computer, clothes, household furnishings, had dental

work performed, and traveled to attend the funeral of a relative. According to debtor, she is holding the remaining $4,000 in reserve to pay for future living expenses.

None of the award debtor received from the Social Security Administration was applied to the debt owed on the above education loans.

Debtor filed a voluntary chapter 7 petition on August 13, 2004. The schedules attached to the petition list assets with a total declared value of $22,201.00 and liabilities totaling $44,347.10.

Included among the assets listed on the schedules is the above lump-sum award in the amount of $21,000, which debtor has exempted in its entirety in accordance with § 522(d)(10)(C) of the Bankruptcy Code.

All of the debt listed on the schedules is owed to general unsecured creditors. Sallie Mae is listed as having an undisputed claim in the amount of $16,000 arising from the above education loans.

The schedules indicate that debtor's monthly income, all of which is in the form of disability payments from the Social Security Administration, totaled $802.00 as of the petition date. Her monthly expenses at that time totaled $796.50.

The chapter 7 trustee appointed in this case reported after conducting the § 341 meeting of creditors that no assets of the bankruptcy estate were available for distribution to pre-petition creditors.

Debtor has commenced this adversary action against Sallie Mae. She asserts in the complaint that having to repay the above education loans would impose an undue hardship

on her in light of her psychological and emotional disorders and seeks a determination that the debt owed to Sallie Mae consequently is not excepted from discharge by § 523(a)(8) of the Bankruptcy Code.

The matter has been tried and now is ready for decision.

### – DISCUSSION –

Section 523(a)(8) of the Bankruptcy Code provides in part as follows:

> (a) The discharge of a debt under section 727 ... of this title does not discharge an individual debtor from any debt -- ....
>   (8) for ... [a] loan guaranteed by a governmental unit ..., unless excepting such debt from discharge would impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8).

It is not disputed that a governmental unit guaranteed repayment of the above education loans debtor obtained to further her post-secondary education. It also is not disputed that the amount due and owing when debtor filed her bankruptcy petition approximated $16,000.00.

This provision of the Bankruptcy Code is "self-executing". A student loan will not be dismissed unless the debtor "affirmatively secures a hardship determination". *Tennessee Student Assistance Corp. v Hood*, 541 U.S. 440, 450, 124 S.Ct. 1905, 1912, 158 L.Ed.2d 764 (2004).

Congress enacted § 523(a)(8) to prevent abuses of education loan programs and to preserve their solvency. *In re Pelkowski*, 990 F.2d 737, 743 (3d Cir. 1993). The legislative debate preceding its enactment focused on the goals of rescuing student loan

programs from "fiscal doom" and "preventing abuse of the bankruptcy process by undeserving debtors". *Id*. Individuals who benefit greatly from education loans that were paid for with funds guaranteed by a governmental unit all too often have sought to avoid their personal obligations to repay the loans. Though they could have done so, they often chose instead to avoid the belt-tightening and sacrifice on their part that might be required.

The standard for determining whether having to repay an education loan would result in undue hardship for purposes of § 523(a)(8) is settled law in this circuit. *In Pennsylvania Higher Education Assistance Agency v Faish (In re Faish)*, 72 F.3d 298 (3d Cir.), *cert denied*, 518 U.S. 1009, 116 S.Ct. 2532, 135 L.Ed.2d 1055 (1996), the Third Circuit adopted the three-part test articulated by the Second Circuit in *Brunner v New York State Higher Education Services Corp. (In re Brunner)*, 831 F.2d 395 (2d Cir. 1987). The Third Circuit concluded that the Brunner test was the "most logical and workable of the established tests" for determining "undue hardship". *Faish*, 72 F.3d at 306.

"Undue hardship" for purposes of § 523(a)(8) requires proof that: (1) based on current income and expenses, debtor cannot maintain a minimal standard of living for herself and her dependents if she has to repay the loan; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the loan repayment period; and (3) debtor has made a good faith effort to repay the loan. *Faish*, 72 F.3d at 305.

Debtor has the burden of proving by a preponderance of the evidence that all three of these requirements are satisfied. *Brightful v Pennsylvania Higher Education Assistance Agency (In re Bightful)*, 267 F.3d 324, 327 (3d Cir. 2001). Each requirement must, in other words, be satisfied before the debt may be discharged. If any one element is not satisfied, the analysis ends and remaining elements need not be considered. *Faish*, 72 F.3d at 305.

The first element requires examination of debtor's current financial situation to determine whether requiring her to repay the education loan would cause her standard of living to fall below what is "minimally necessary". *Id*. A showing that debtor's finances will be "tight", without something more, will not suffice in this regard. *Faish*, 72 F.3d at 306.

The second element requires proof that there are additional circumstances which indicate that the state of affairs described by the first element is likely to persist for a substantial portion of the loan repayment period. *Faish*, 72 F.3d at 305.

As for the third element, debtor must prove that she has made a good faith effort to repay the loan during the period starting on the date on which the first loan payment was due and ending on the date on which debtor filed her bankruptcy petition. *Pellicia v U.S. Department of Education*, 67 Fed. Appx. 88, 90 (3d Cir. 2003). Our inquiry must be guided by the principle that debtor may not willfully or negligently cause her own default. Debtor's financial plight must be due to factors beyond her reasonable control. *Faish*, 72 F.3d at 305.

A court inquiring whether debtor has made a good faith effort to repay her education loan should consider whether: (1) she incurred substantial expenses beyond those required for basic necessities; and (2) she made efforts to restructure the loan before filing her bankruptcy petition. *Pellicia*, 67 Fed. Appx. at 91.

To put the above standard in perspective, the proper inquiry for determining whether a debt is excepted from discharge by reason of § 523(a)(8) is whether it would be unconscionable to require a debtor to take available steps to earn more income or to reduce expenses to repay the loan. *Faish*, 72 F.3d at 307.

After assessing the evidence offered at trial, we conclude that debtor has failed to establish that the second and the third of the above required elements are satisfied in this instance. The undue hardship exception in § 523(a)(8), in other words, does not apply to debtor.[1]

### Is Debtor's Financial Plight Likely To Persist?

According to debtor's schedules, her monthly net income at the time of the bankruptcy filing was $802.00 while her monthly expenditures totaled $796.50, only $5.50 less than her monthly income. Debtor testified at trial that her monthly disability payment had increased to $814.00 recently. She did not, however, specify in detail what her monthly expenses were at the time of trial. We have no way of knowing whether they have remained the same, increased, or even decreased since she filed her bankruptcy petition.

---

[1.] The above statement of the applicable law makes clear that there is no need to address whether the first of these requirements is satisfied if we determine that the second and/or third requirements are not.

We nonetheless shall assume for the sake of argument that debtor will be unable to maintain a minimal standard of living in light of her present income and present expenses if she is required to fully repay the above education loans. Even if we so assume, however, debtor has not demonstrated to our satisfaction that this situation is likely to persist for a substantial portion of the loan repayment period.

The primary thrust of debtor's attempted demonstration of the second of the above requirements was that her psychological problems, which she claims are responsible for her present financial plight, can be expected to persist for the foreseeable future. In addition to offering her own prognosis as to her future psychological condition, debtor appeared to rely upon the written report of the administrative law judge who determined that debtor was disabled and thus was entitled to receive Social Security disability benefits. We conclude that this evidence does *not* suffice to demonstrate that debtor's psychological problems can expected to persist for a substantial portion of the education loan repayment period.

While we might give considerable weight to the opinion of a qualified expert concerning the expected duration of debtor's psychological disorders, debtor herself does not qualify as an expert in such matters. Moreover, because she is caught in the maelstrom of her psychological problems, debtor is not in a position to offer an objective and informed opinion concerning her future psychological condition, one that would withstand scrutiny. Our impression of the permanence of debtor's dysthymic mental state

is not as bleak as debtor's obviously is. We are optimistic that her problems, both financial and psychological, may and eventually will abate.

As for the written decision of the administrative law judge, we find nothing therein indicating that debtor's psychological disorders are permanent or can be expected to persist for a prolonged period. To the contrary, the administrative law judge concluded only that debtor met the disability requirements of the Social Security Act *through September 30, 2007*. We take this to mean that the question of debtor's disability for purposes of the Social Security Act could be revisited at that time to determine if she still is disabled.

Moreover, even if the administrative law judge had determined in his written report that debtor's psychological disorders were permanent or were likely to persist for a prolonged period of time, debtor at best only offered the written report for the truth of what was contained therein. As such, it is inadmissible hearsay. *See* Federal Rules of Evidence 801(c) and 802.

Debtor had to offer persuasive expert testimony that her psychological disorders could be expected to persist for a substantial portion of the loan repayment period to establish that the second requirement of undue hardship for purposes of § 523(a)(8) is satisfied in her case. She offered no such credible evidence at trial.

### *Has Debtor Made A Good Faith Attempt To Repay The Loan?*

The determination that debtor has failed to establish the second of the above requirements for undue hardship obviates the need to determine whether she also established that she made a good faith attempt to repay her education loan. She can prevail if and only if all three of the above requirements have been established. In the interest of thoroughness, however, we will also consider whether debtor made a good faith attempt to repay her education loan.

An important consideration when determining whether debtor made a good faith attempt to repay her education loan is whether she sought to restructure the payments before filing her bankruptcy petition. *Pellicia*, 67 Fed. Appx. at 91.

Congress enacted the William Ford Income Contingent Repayment Program (ICR) to enable financially straitened education loan borrowers to repay the loans by easing their burden of so doing. While it may not be necessary in every case for a debtor to have participated in ICR to show good faith for purposes of § 523(a)(8), we believe it is probative in this case.

An education loan borrower has a variety of options for repaying the loan. One option is ICR, which permits varying annual payments based on the borrower's income over an extended period not to exceed twenty-five years. 20 U.S.C. § 1087e (d)(1)(D).

The annual amount payable under this option is the lesser of: (1) the amount the borrower would pay annually over twelve years using standard amortization multiplied by an income percentage factor that corresponds to the borrower's adjusted gross income;

or (2) twenty percent of discretionary income. 34 C.F.R. § 685.209(2). If a borrower's monthly payment is calculated to be greater than $0 but less than or equal to $5.00, the amount payable is $5.00. 34 C.F.R. § 685.209(6). If a participating borrower has not repaid the loan in full at the end of the twenty-five year repayment period, the unpaid portion is cancelled. 34 C.F.R. § 685.209(4)(iv).

Had debtor availed herself of this option, the amount of her loan payments almost certainly would have been *de minimis* at first, perhaps as little as $5.00 per month. If debtor's income increased, as we believe it should over time, the amount she would be required to pay every month would commensurately increase. Any unpaid balance remaining after twenty-five years would be cancelled.

Debtor testified at trial that she was aware of ICR and had discussed it with her bankruptcy counsel before filing a bankruptcy petition, but decided against pursuing it. The reason for deciding against it was not clear from her testimony at trial.

We conclude in light of debtor's refusal to avail herself of the exceedingly generous repayment terms available under ICR that she did not make a good faith attempt to repay the above education loans. Instead of acting decisively, debtor dithered and did nothing.

One final matter perhaps should be addressed before our analysis concludes. Had debtor taken advantage of ICR, the total amount of the loan she would have repaid at the end of twenty-five years may not have amounted to much and would have comprised only a nominal percentage of the total amount she actually owed to Sallie Mae. In spite of this, we do not believe our determination that debtor failed to make a good faith effort to repay

the loan elevates form over substance. As we see it, the law does not give us much, if any, discretion to "cut debtor a break".

Section 523(a)(8) was enacted to preserve the solvency of education loan programs. *Pelkowski*, 990 F.2d at 743. ICR neatly dovetails with this objective. By enacting ICR, Congress provided a mechanism whereby borrowers could repay their education loans, at least in part, regardless of how little they could afford to pay.

As we see it, the interplay between ICR and § 523(a)(8) undercuts our discretion to disregard a debtor's obligation to make a good faith attempt to repay an education loan merely because the amount the debtor can repay even under ICR may be nominal at best. If a debtor can pay something towards the loan but refuses to do so, no matter how little it may be, we must conclude that the debtor has not made a good faith effort to repay an education loan for purposes of § 523(a)(8) of the Bankruptcy Code.

An appropriate order shall issue.

                                            /s/
                              **BERNARD MARKOVITZ**
                              U.S. Bankruptcy Judge

Dated: **November 4, 2005**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **MICHELLE J. SHILLING,** | : | Bankruptcy No. 04-30704 BM |
| | : | |
| **Debtor** | : | Chapter 7 |
| ***************************** | | |
| **MICHELLE J. SHILLING,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | Adversary No. 04-3248 BM |
| | : | |
| **SALLIE MAE SERVICING** | : | **Complaint To Determine** |
| **CORPORATION,** | : | **Dischargeability Of Debt** |

## ORDER OF COURT

**AND NOW**, this **4th** day of **November**, 2005, for reasons set forth in the foregoing memorandum opinion, it hereby is **ORDERED**, **ADJUDGED** and **DECREED** that judgment be and hereby is entered in favor of defendant Sallie Mae Servicing Corporation and against debtor Michelle J. Shilling. The debt owed to defendant by debtor is **NOT DISCHARGED**.

It is **SO ORDERED**.

                                                **/s/**
                                        **BERNARD MARKOVITZ**
                                        U.S. Bankruptcy Judge

Service to be made by the Case Administrator on the following parties:
James H. English, Esq.
John P. Neblett, Esq.
Lisa M. Swope, Esq.
Office of United States Trustee